**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CASTLES AUTO AND TRUCK SERVICE,
INCORPORATED,
<u>Plaintiff-Appellant,</u>

v.                                                            No. 95-3183

EXXON CORPORATION, d/b/a Exxon
Company, USA,
<u>Defendant-Appellee.</u>

CASTLES AUTO AND TRUCK SERVICE,
INCORPORATED,
<u>Plaintiff-Appellee,</u>

v.                                                            No. 96-1117

EXXON CORPORATION, d/b/a Exxon
Company, USA,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CA-90-166-3-MU)

Argued: June 6, 1997

Decided: September 23, 1997

Before RUSSELL, WIDENER, and WILKINS, Circuit Judges.

_____

Reversed and remanded by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Allen C. Brotherton, KNOX, KNOX, FREEMAN & BROTHERTON, Charlotte, North Carolina, for Appellant. Richard Edwin Morton, PETREE STOCKTON, Charlotte, North Carolina, for Appellee. **ON BRIEF:** H. Edward Knox, KNOX, KNOX, FREEMAN & BROTHERTON, Charlotte, North Carolina; Bryant T. Aldridge, BRETZMANN, BRUNER & ALDRIDGE, High Point, North Carolina; Rodney Shelton Toth, Charlotte, North Caroina, for Appellant. Richard C. Gaskins, Jr., PETREE STOCKTON, Charlotte, North Carolina; William J. Stack, Joseph P. Perez, Legal Department, EXXON COMPANY, UNITED STATES ATTORNEY, Houston, Texas, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Castles Auto and Truck Service, Incorporated brought this action against Exxon Corporation, asserting various claims arising from Exxon's alleged contamination of Castles' property. Castles appeals the decision of the district court setting aside the jury verdict for $500,000 in response to Exxon's renewed motion for judgment as a matter of law on Castles' legal claims. See Fed. R. Civ. P. 50. Exxon cross appeals, principally asserting various evidentiary errors. We reverse and remand to the district court.

I.

Castles operated an automobile repair business adjacent to an Exxon petroleum storage facility on property Castles purchased from Exxon in 1981. In April 1989, Exxon discovered a discharge of petroleum into the soil at its facility and began efforts to clean up the leak

2

and monitor its effects. Subsequently, it was determined that Castles' property also was contaminated with a petroleum product.

Castles brought this action against Exxon, claiming that its property had been contaminated by the discharge of petroleum at Exxon's facility and alleging negligence, fraudulent misrepresentation, trespass, nuisance, and statutory strict liability pursuant to the North Carolina Oil Pollution and Hazardous Substances Control Act (OPHSCA) of 1978, see N.C. Gen. Stat. §§ 143-215.75 to -215.104 (1996). Exxon defended by asserting that Castles had contaminated its own property.

At the conclusion of the trial of Castles' legal claims,[1] the district court submitted a special verdict form, on which the jury indicated the following: (1) Exxon negligently stored or handled petroleum products on its property, and its negligence proximately caused damage to Castles; (2) Castles discharged petroleum or hazardous products onto its own property, but was not negligent in so doing; (3) Exxon did not commit a wrongful trespass on Castles' property; (4) Exxon did not create a nuisance; and (5) Castles was entitled to recover $500,000 in compensatory damages.

The district court subsequently granted Exxon's motion for judgment as a matter of law and set aside the jury verdict on two grounds. First, the court held that the findings of the jury that Exxon had neither committed a wrongful trespass on Castles' property nor created a nuisance compelled the conclusion that none of the contamination entered onto or physically affected Castles' property. The court therefore concluded that the jury must have found that the only injury suffered by Castles was a reduction in the market value of its property, which would not support the recovery under North Carolina law. The district court also determined that because Castles had presented no evidence that would have allowed the jury reasonably to distinguish between the damage caused by Exxon's leaks and Castles' discharge of hazardous substances, the award of $500,000 was speculative. Finally, the district court found for Exxon on Castles' nonjury claims.

_____

[1] The district court heard the OPHSCA claims as nonjury matters simultaneously with the jury trial of the legal claims.

3

II.

Castles first maintains that the district court erred in granting judgment as a matter of law, setting aside the jury verdict in Castles' favor on its negligence cause of action. We review the grant of judgment as a matter of law to determine whether the evidence presented at trial, viewed in the light most favorable to Castles, would have allowed a jury to render a verdict in Castles' favor. See Price v. City of Charlotte, N.C., 93 F.3d 1241, 1249 (4th Cir. 1996), cert. denied, 117 S. Ct. 1246 (1997). Because the Seventh Amendment does not allow federal courts to review jury verdicts directly, Exxon "bears a hefty burden in establishing that the evidence is not sufficient to support the award." Id. Recognizing that we may neither substitute our judgment for that of the jury nor make credibility determinations, we must conclude that judgment as a matter of law was granted erroneously if there is any evidence on which a reasonable jury could have returned a verdict in Castles' favor. See id. at 1249-50. We review the decision of the district court granting judgment as a matter of law de novo. See Trandes Corp. v. Guy F. Atkinson Co. , 996 F.2d 655, 661 (4th Cir. 1993).

In order for Castles' negligence claim to survive Exxon's motion for judgment as a matter of law, Castles was obligated to present evidence at trial that Exxon owed Castles a duty of care, that Exxon's conduct breached that duty, that the breach was the actual and proximate cause of Castles' injury, and that damages resulted from the injury. See Lamm v. Bissette Realty, Inc., 395 S.E.2d 112, 115 (N.C. 1990). The duty that Exxon owed Castles is clearly established under North Carolina law: "The law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm, and calls a violation of that duty negligence." Council v. Dickerson's, Inc., 64 S.E.2d 551, 553 (N.C. 1951).[2]

_____

[2] We do not agree with Exxon's contention that Castles was required to submit evidence of a specialized standard of care. See Norris v. Rowan Mem'l Hosp., 205 S.E.2d 345, 348 (N.C. Ct. App. 1974) (holding that because the "alleged breach of duty did not involve the rendering or failure to render professional nursing or medical services requiring special

4

In the light most favorable to Castles, the evidence at trial established the following facts: (1) Exxon was aware of holes in the bottom of one of its tanks, yet continued to use it after merely "button[ing it] up," J.A. 770; (2) petroleum product leaked from the tank until it was taken out of service in 1989; (3) Exxon did not use any method to monitor petroleum product loss from its underground pipes to its loading rack; (4) there was a leak in at least one of those lines continuing as late as 1989 or 1990; (5) by the time Exxon's contractor was informed of the leak by Exxon, there had been a release of a substantial quantity of petroleum product; (6) contamination from the leaking tank and the leaking line moved through the subsurface and groundwater, resulting in contamination of Castles' property;[3] and (7) remediation of the Castles property would cost at least $500,000. Because the evidence presented by Castles was adequate to support a conclusion by a reasonable jury that Exxon's negligent discharge of petroleum contaminated its property, and that remediation of the contamination would cost at least $500,000, the district court erred in granting judgment as a matter of law to Exxon.[4]

_____

skills, expert testimony on behalf of [injured hospital patient] as to the standard of due care prevailing among hospitals in like situations [was] not necessary to develop a case of negligence";"jury was fully capable without aid of expert opinion to apply the standard of the reasonably prudent man").

[3] Exxon argues the district court abused its discretion by failing to hold hearings pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), to determine the admissibility of Castles' expert testimony. We disagree. See id. at 592 ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." (emphasis added) (footnote omitted)); Hopkins v. Dow Corning Corp., 33 F.3d 1116, 1124 (9th Cir. 1994) (holding that a formal hearing is not required for a district court to make a determination as to the admissibility of proposed expert testimony). We further find the district court was within its discretion in admitting Castles' expert testimony. See Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378, 1383-85 (4th Cir. 1995) (holding that abuse of discretion standard applied to determinations made by the district court concerning Daubert test).

[4] Exxon also argues the district court should have entered judgment in its favor on the basis of a ten-year statute of repose. See N.C. Gen. Stat.

5

III.

Although we conclude that the district court erred in granting judgment as a matter of law, we recognize that the concern driving the decision of the district court to set aside the verdict was the apparent inconsistency between the verdicts in Castles' favor on the negligence claim and in Exxon's favor on the trespass and nuisance claims. The proper remedy for inconsistent verdicts, however, is a new trial, not judgment as a matter of law. See Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 598 (4th Cir. 1996); see also Fed. R. Civ. P. 49(b) ("When the answers [to interrogatories] are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial."). Consequently, we remand to permit the district court to determine whether a new trial is warranted. See Neely v. Martin K. Eby Constr. Co., 386 U.S. 317, 329 (1967) (noting that the court of appeals may refer the question of the appropriateness of a new trial to the district court when it reverses the grant of judgment notwithstanding the verdict).[5]

REVERSED AND REMANDED

_____

§ 1-52(16) (1996). We disagree. Although a ten-year statute of repose applies to Castles' legal claims, reviewing the evidence in the light most favorable to Castles, and drawing all reasonable inferences therefrom, the evidence provided was adequate to support a conclusion that the release from the damaged tank continued until 1989 and the leak at the loading rack was not stopped until late 1989 or early 1990. The evidence further is ample to show that both of these leaks damaged Castles' property. The district court therefore correctly concluded that Exxon was not entitled to judgment as a matter of law on that ground.

[5] Because Castles has conceded that the damages it sought on its OPHSCA claims were identical to those it was awarded on its negligence claim and that its contention that it was improperly denied a jury trial on its OPHSCA claims "arises only if this Court does not reinstate judgment for [Castles] on the negligence claim," Brief of Appellant at 26, we need not address that issue.

6